UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JOAQUIN MARIO VALENCIA-TRUJILLO,


v.                                    Case No. 8:11-cv-428-T-17EAJ
                                             8:02-cr-329-T-17EAJ


UNITED STATES OF AMERICA.


_____

# O R D E R

This cause is before the Court on Valencia-Trujillo's 28 U.S.C. § 2255 motion

to vacate, set aside or correct an illegal sentence (Doc. cv-1; cr-1045) supported by

a memorandum filed February 17, 2017.    (Doc. cv-179).    The Government

responded to the motion to vacate (Doc. cv-191) and Valencia-Trujillo replied to the

response. (Doc. cv-192).

## PROCEDURAL BACKGROUND

Over fourteen years ago, Valencia-Trujillo was charged with conspiracy to

import cocaine, distribute cocaine and commit money laundering and conducting a

continuing criminal enterprise (CCE). (Doc. cr-1). Count one of the indictment

charged Valencia-Trujillo with conspiracy to import 5 kilograms or more of cocaine

into the United States in violation of 21 U.S.C. § 952(a), 960(b)(1)(B)(ii) and 963.

Count two charged Valencia-Trujillo with conspiracy to possess with intent to

distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1),

841(b)(b)(A)(ii)(II) and 846. Count three charged Valencia-Trujillo with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a). Count four charged Valencia-Trujillo with conspiracy to commit money laundering in violation or 18 U.S.C. § 1956(a)(1)(2) and (h).

Valencia-Trujillo was extradited to the United States and, after a 66-day jury trial, convicted of all counts. (Doc. cr-766-67). The Court sentenced Trujillo to 480 months incarceration, consisting of terms of 480 months incarceration as to each of counts one, two and three of the Indictment, all counts to run concurrently; and 240 months incarceration as to count four of the indictment, to run concurrently with counts one, two and three. The Court ordered Valencia-Trujillo to forfeit $110 million. Judgment was entered February 1, 2007. (Doc. cr-817).

Valencia-Trujillo appealed, and the Eleventh Circuit affirmed Valencia-Trujillo's conviction and sentence. Valencia-Trujillo raised five unsuccessful arguments. First, he argued that this Court violated the rule of specialty by admitting all pre-December 1997 evidence offered by the United States; failed to subject that evidence to the requirements of Fed. R. Evid. 403 and 404(B); and permitted a trial for offenses not authorized by Colombia. Second, Valencia-Trujillo claimed this Court erred by permitting use of uncharged substantive offenses in violation of the Grand Jury Clause. Third, he asserted that this Court erred by refusing to conduct a *Franks* hearing on the reliability of the affidavit of Special Agent Rod Huff. Fourth, Valencia-Trujillo alleged that this Court erred by overruling his objection to striking

the only Colombian-American prospective juror. Fifth, Valencia-Trujillo challenged this Court's denial of his renewed motion for judgment of acquittal or a new trial based on insufficiency of the evidence.

The Eleventh Circuit denied all of his claims, stating that, "Valencia-Trujillo was not railroaded but was fairly caught and convicted. He enjoyed a wild ride but was overtaken by the Panama Express, which may be his earthly version of 'The Hell-Bound Train.'" (Doc. cr-1011); *United States v. Trujillo,* 573 F.3d 1171 (11th Cir. 2009). The United States Supreme Court denied his petition for certiorari on March 1, 2010. *Valencia-Trujillo v. United States*, 559 U.S. 987 (2010).

Valencia-Trujillo challenges his conviction and sentence in his present 28 U.S.C. § 2255 motion to vacate, which was timely filed. The motion to vacate was held in abeyance for several years so Valencia-Trujillo could obtain counsel to file a support memorandum of law. (Docs. cv-1-2, 30-67, 167, 169-171). Subsequently, the Court granted Valencia-Trujillo's motion to amend ground three of his motion to vacate. (Doc. cv-181).

A review of the record demonstrates that, with the exception of Ground Nine, Valencia-Trujillo's grounds for relief must be denied.

## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

To succeed on an ineffective assistance of counsel claim, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668,

687 (1984). When evaluating performance, this Court must apply a "strong presumption" that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *See Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner fails to establish either of the *Strickland* prongs, his claim fails. *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005).

There is a strong presumption that a lawyer's performance is "within the wide range of reasonable professional assistance" or that such actions were sound strategies. *Strickland*, 466 U.S. at 689. Counsel's informed and strategic decisions are not grounds for an ineffective assistance of counsel claim. And strategic decisions rendered by counsel after a complete review of relevant laws and facts are "virtually unchallengeable." *Strickland*, 466 U.S. at 690–91.

Counsel is not constitutionally ineffective for failing to assert meritless arguments. *See, Mosby v. United States,* 2017 WL 1352222 *3 (S.D. Ga., Apr. 10, 2017) (citing *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (an

attorney is not ineffective for failing to raise meritless claims). *See, e.g., Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("counsel cannot be ineffective for a failure to raise an issue that lacks merit"). A defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The failure to raise a weak or meritless argument is not prejudicial. *Johnson v. Alabama*, 256 F.3d 1156, 1188 (11th Cir. 2001) (appellate counsel not ineffective for failing to raise issues for which "there was little persuasive foundation, and little likelihood of success"); *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). Nor is counsel ineffective for strategically choosing mitigating arguments. *McNeal v. Wainwright*, 722 F.2d 674, 676 (11th Cir. 1984) ("Counsel will not be deemed unconstitutionally deficient because of tactical decisions.") (citations omitted).

### Burden of Proof

In general, on collateral review the petitioner bears the burden of proof and persuasion on each and every aspect of his claim, *see In re Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016) (collecting cases), which is "a significantly higher hurdle than would exist on direct appeal" under plain error review, *see United States v. Frady*, 456 U.S. 152, 164-66 (1982). Accordingly, if this Court "cannot tell one way or the other"

whether the claim is valid, then the defendant has failed to carry his burden. *Moore*, 830 F.3d at 1273; *cf. United States v. Rodriguez*, 398 F.3d 1291, 1300 (11th Cir. 2005) (in plain error review, "the burden truly is on the defendant to show that the error actually did make a difference … Where errors could have cut either way and uncertainty exists, the burden is the decisive factor in the third prong of the plain error test, and the burden is on the defendant."). Valencia-Trujillo cannot meet this burden.

## DISCUSSION

### Ground One

Valencia-Trujillo claims that counsel was ineffective for failing to seek enforcement of the agreement on extradition and the rule of specialty. (Doc. cv-1 at 4-7). The Court notes that once Valencia-Trujillo arrived in the United States, Valencia-Trujillo's trial counsel engaged in litigation to enforce the rule of specialty, specifically seeking to limit the discussion or admission of any pre-December 17, 1997, evidence.[1] (See Docs. cr-67, 106, 108, 115, 324, 350, 441, 446. As a result, this Court ordered the redaction of predicate acts 1 through 26 from the indictment, a limiting jury instruction regarding consideration of the defendant's conduct prior to

---

[1] The rule of specialty "stands for the proposition that the requesting state, which secures the surrender of a person, can prosecute that person only for the offense for which he or she was surrendered by the requested state or else must allow that person an opportunity to leave the prosecuting state to which he or she had been surrendered." *United States v. Gallo-Chamorro*, 48 F.3d 502, 504 (11th Cir. 1995) (quoting *United States v. Herbage*, 850 F.2d 1463, 1465 (11th Cir. 1988)).

December 17, 1997, and a special verdict form consistent with the limiting instruction. (Docs. cr-126, 187).

New Evidence

Colombia presented diplomatic notes regarding Valencia-Trujillo's extradition, most recently, on July 5, 2016. Colombia highlighted that "for the Government of Colombia the principle of specialty . . . governs every extradition . . . . Colombia claims that a condition to grant an extradition of a Colombian national, not only operates over the offenses for which he was authorized in extradition, but also on the facts and evidentiary material presented during the trial. Colombia claims that allowing the judge and jury to have access to evidentiary material on events occurring prior to 1997 and presenting charges based on those facts, clearly ignores the conditions imposed by the Colombian Government and might affect and influence the outcome of the trial that is underway against the indicted. (Cited and Quoted from Doc. cv-14 p. 14-15 and Exhibit A; *see also* Doc. cr-1463).

However, as the United States has demonstrated, the United States did not violate the rule of specialty:

> The Department of State refers to the United States Embassy in Bogata's Diplomatic Note No. 1421, dated July 28, 2014, asking for the basis for Colombia's assertions regarding violations of the rule of specialty in the prosecution of Joaquin Mario Valencia-Trujillo, to the The Embassy of Colombia's Diplomatic Note S-EUSWHT-14-1748, dated November 17, 2014, which forwarded Verbal Note S-GAIC-14-081142 from the Ministry of Foreign Affairs, Directorate of Migration, Consular Affairs and Citizen Services (Attachment 1), identifying the bases for the Government of Colombia's assertions regarding violations

of the rule of specialty in this case and attaching a copy of a chart prepared by Valrom Consulting Services (Attachment 2) purportedly showing discrepancies between the extradition request, indictment, and jury verdict.

In this regard, the United States is pleased to provide the following information regarding the points raised by the Ministry of Foreign Relations in its diplomatic note S-GAIC-14-081142.

1. Initially, the United States reiterates that Valencia-Trujillo was charged, prosecuted, convicted and punished in the United States for the Offense (Count Three) of having engaged in a continuing criminal enterprise in violation of Title 21, United States Code, Section 848 (CCE). That offense was the offense enumerated in the extradition request dated March 31, 2003, presented by the United States to Colombia; the offense found by the Supreme Court of Justice of Colombia in its decision of February 11, 2004, to have met all legal requirements under Colombian law for concession of extradition; and the offense approved by the President of Colombia in his resolutions number 024, dated February 25, 2004, and number 037, dated March 16, 2004. Consequently, there was no violation of the rule of specialty regarding Valencia-Trujillo's conviction for the CCE offense in Count Three of the indictment.

Colombian officials have recognized, in order to convict Valencia-Trujillo of the offense in Count Three, the United States had to prove that he engaged in at least three predicate acts that involved the conduct that would violate U.S. narcotics laws. None of the predicate acts enumerated in Count Three was charged in the indictment as a separate offense, and, even though the jury later found Valencia-Trujillo had committed many of those acts, he was convicted in Count three of only one offense, specifically, engaging in a continuing criminal enterprise, as approved by the Supreme Court of Justice and the President of Colombia. The purpose of specifying the predicate acts in the indictment was to provide Valencia-Trujillo with pre-pretrial notice of the evidence that would be presented against him at trial regarding Count Three.

In its Diplomatic Note number 674, dated March 17, 2004 (Attachment 3), the United States accepted the condition appearing in

the Colombian Supreme Court decision and the President's extradition resolution, which limited the United States to prosecuting and punishing Valencia-Trujillo only for offenses occurring after December 17, 1997. The United States compiled with that condition in this case. Initially, in response to a request from Valencia-Trujillo, the U.S. district judge ordered the prosecutors to eliminate from Count Three of the indictment twenty-six predicate acts that alleged Valencia-Trujillo committed conduct occurring before December 17, 1997. As a result, the U.S. prosecutors modified the predicate acts in Count Three to recite predicate acts occurring after December 17, 1997, so as to comply with the U.S. district judge's order, which implemented the conditions of Colombia's grant of extradition. Valencia-Trujillo was notified of those changes in the predicate acts before his trial began. Those changes in the predicate acts in Count Three account for the differences in the indictment submitted in the U.S. extradition request and the indictment used at Valencia-Trujillo's trial.

As the Ministry of Foreign Relations also noted, the list of predicate acts contained in the verdict form (Attachment 5) submitted to the jury at the end of the presentation of evidence did not follow exactly the modified predicate offenses in the indictment used at the trial. The differences in the two documents resulted from the fact that fewer than all of the predicate acts in the indictment were submitted for the jury's consideration regarding Count Three. Specifically, predicate acts listed in the indictment as numbers 3, 4, and 31-36 were not included in the verdict form and were not voted upon by the jury or used as a basis for finding Valencia-Trujillo guilty of Count Three. As a result, the predicate acts in the verdict form carried different numbers than they did in the indictment used at trial. For example, predicate act number 5 in the indictment appeared as predicate act number 3 in the verdict form. The numbers of the predicate acts differed by two throughout the verdict form until the end, when numbers 31-36 in the indictment were simply eliminated. Allowing the jury to consider fewer than all of the indictment's predicate acts is not uncommon under U.S. law. During a criminal trial, for example, the evidence can develop differently than the prosecutor expected, or the prosecutor may simply decide not to prove all of the many predicate acts enumerated in the indictment since the jury must agree on only three acts in order to convict a defendant of engaging in a continuing criminal enterprise.

The jury convicted Valencia-Trujillo in Count Three of engaging

in a continuing criminal enterprise, the same offense the Republic of Colombia approved extradition. Neither the modifications to the predicate acts enumerated in the indictment submitted for extradition nor renumbering of those predicate acts in the verdict form resulted in Valencia-Trujillo being convicted of a different offense.

2. As noted in the ministry's diplomatic note, two of the predicate acts contained in the indictment used at trial alleged criminal conduct which began before December 17, 1997, and continued thereafter. Predicate act numbers 9 and 10 listed in the verdict form each alleged that some of Valencia-Trujillo's illegal conduct began as early as June 1997. The jury later found that Valencia-Trujillo had engaged in the conduct described in those two predicate acts. The United States insured, however, that the jury's finding regarding those two predicate acts were based solely upon evidence of Valencia-Trujillo's conduct occurring after December 17, 1997.

The district judge instructed the jury during the trial that it could not find Valencia-Trujillo guilty of any of the offenses in Counts One-Four unless it found that the charge had been proven by evidence of his conduct occurring after that date (Attachment 4). The instruction applied equally to the offenses in Counts One-Four, as well as to the predicate acts listed in Count Three. Further, it should be noted that, while the conviction on Count Three required the jury to find that Valencia-Trujillo committed only three of the listed predicate acts, it found that committed twenty of the remaining twenty-six predicate acts, all of which alleged conduct occurring only after December 17, 1997 (Attachment 5). Finally, the district judge imposed Valencia-Trujillo's sentence solely for his convictions of the offenses in Counts One-Four in the indictment, which the jury found he committed after December 17, 1997.

3. The Ministry's diplomatic note suggests that, because the district court allowed the government to introduce evidence pre-dating December 17, 1997, in support of its three conspiracy charges (Counts One, Two and Four), the United States failed to observe the rule of specialty in Valencia-Trujillo's trial. The United States wishes to point out that the rule of specialty applies to the offenses authorized for extradition, not to the specific evidence the requesting country might

present at a trial in proving those offenses. In any event, only evidence of Valencia-Trujillo's criminal conduct occurring after December 17, 1997, was used as a basis for his convictions of the three conspiracies. The judge instructed the jury, and the verdict form confirmed, that Valencia-Trujillo could be found guilty of the conspiracies only if the jury agreed that he committed those offenses after December 17, 1997 (Attachments 4-5). Consequently, the United States fully compiled with the rule of specialty, as well as the specific conditions relating to offenses occurring before December 17, 1997, contained in the Colombian extradition decree and resolutions.

The Ministry further notes that the United States Court of Appeals for the Eleventh Circuit held that Valencia-Trujillo lacked standing to argue in that court that the Untied States had violated the rule of specialty. The Ministry interprets the courts ruling as evidence of the United States' non-observaonce of the rule of specialty and the conditions set out in the Colombian extradition decree and resolutions.

The United States respectfully disagrees. Regardless of whether Valencia-Trujillo had a personal right to raise a claim under the rule of specialty or the extradition resolution, the United States government has recognized in diplomatic note number 674, dated March 17, 2004, that it made binding assurances and guarantees to the Republic of Colombia regarding Valencia-Trujillo's prosecution. In fulfillment of those assurances and guarantees, the United States undertook the measures described above, including: modification of the predicate acts listed in Count Three; the districts judge's instructions to the jury that it could find Valencia-Trujillo committed the conduct described in the predicate acts in Count Three, and convict him of the conspiracy offenses in Counts One, Two and Four, based only on evidence of his conduct after December 17, 1997; the use of the special verdict form that confirmed that the jury followed the district judge's instructions; and the district judge's imposition of Valencia-Trujillo's sentence only on Counts One-Four in the indictment, which the jury found he committed after December 17, 1997.

For all of the reasons stated in the above paragraphs, the United States confirms that it fully complied with the assurances it made in Diplomatic Note number 674, dated March 17, 2004.

Department of State,

Washington, June 21, 2016.

Because the United States did not violate the rule of specialty, ground one does not warrant relief.

## Ground Two

Valencia-Trujillo claims that counsel was ineffective for failing to utilize the services of translators before and during trial in violation of the Court Interpreters Act (CIA). (Doc. cv-1 at 8-9). He contends this failure deprived him of the opportunity to "participate fully in the trial process," but fails to provide details of any instance where such depravation occurred and how he was prejudiced. (Id. at 9).

The CIA was enacted "'to ensure that the defendant can comprehend the proceedings and communicate effectively with counsel.'" *Mendoza v. United States*, 755 F.3d 821, 828 (7th Cir. 2014) (other quotations and citations omitted). A defendant is entitled to appointment of an interpreter if the court determines that he speaks only or primarily a language other than English, and this fact inhibits his comprehension of the proceedings or communication with counsel. *Id.* Neither the Constitution nor the CIA mandate the appointment of an additional interpreter to sit at the defense table. *Id.* While a defendant has a due process right to communicate with counsel, a defendant does not have a due process right to have an interpreter continuously seated at the defense table. *Id.* The CIA provides for simultaneous interpretation of the proceedings, "not simultaneous interpretation of attorney-client

communications." *Id.* Likewise, due process does not require that discovery documents be translated into a defendant's native language. *Id.* at 831-32 (concluding there was no support for the claim that "the Constitution compels that in every case in which defendant is not fluent in English, all discovery documents must be translated, in written form, into the defendant's native tongue") (citations omitted); *United States v. Gonzales*, 339 F.3d 725, 729 (8th Cir. 2003) (court's failure to provide written translations of documents involved in legal proceedings was not plain error).

In March 2005, counsel requested authorization to hire Ms. Linda Ramirez a Spanish-speaking attorney as co-counsel. (Doc. cr-84). In addition to her expertise in international law, counsel claimed that Ms. Ramirez would translate voluminous Spanish documents and audiotapes provided in discovery by the United States. (Id. at 3). Valencia- Trujillo's request was granted. (Docs. cr-84, 91, 94). Shortly after Ms. Ramirez's appointment, this Court granted her motion for an order requiring, among other requests, that the United States provide English transcripts and translations for foreign-language documents and exhibits. (Docs. cr-109, 136). In April 2006, Valencia-Trujillo's counsel requested authorization to substitute attorney Ronald Kurpiers for Ms. Ramirez. (Doc. cr-388). Following a hearing, that request was granted. (Docs. cr-389, 392, 395).

Translators were used and available throughout the entire trial. *(See* Docs. cr-581, 585, 593-594, 597, 610-611, 613, 624, 628, 630, 633-634, 640-644, 647-649,

655-658, 661, 665, 667-670, 674, 676, 679-681, 688, 693, 699, 704, 707, 718, 726, 728, 730, 734, 737, 739, 741–743, 745, 747–750, 753–754, 756, 758–759, 761–762, and 766.) Translators were also used and available at sentencing. (Doc. cr-810; Doc. cr-936 at 8-9). Even if Valencia-Trujillo were unable to communicate immediately with defense counsel, translators were available throughout the trial, including breaks.

Valencia-Trujillo does not state that he advised counsel of his communication concerns and was ignored. Likewise, although Valencia-Trujillo was at countless hearings prior to the start of trial, he does not claim that he ever notified this Court that he was unable to communicate with his counsel. Nor does Valencia-Trujillo identify a single instance where he was unable to communicate with his counsel or unable to participate in his defense. Valencia-Trujillo has failed to show that the lack of an interpreter amounts to deficient performance or prejudice on the part of his counsel.

Ground two does not warrant relief.

### Ground Three

Valencia-Trujillo alleges that counsel's failure to properly challenge his "specially designated narcotics trafficker" (SDNT) designation deprived him of counsel of his choice. (Doc. cv-1 at 10-11).

The term "SDNT" refers to a significant foreign narcotics trafficker and foreign person designated by the Secretary of the Treasury to be providing assistance or

14

support to international drug trafficking, acting on behalf of a SDNT, or playing a significant role in international drug trafficking. 31 C.F.R. § 598.314. Valencia-Trujillo and members of his family were designated as SDNT's in March 2003. (Doc. cr-262 at 3). Assets are blocked when the United States Department of the Treasury Office of Foreign Assets Control (OFAC) designates the owner of the assets as a SDNT. (*See* 31 C.F.R. § 536.301; Doc. cr-262 at 4.)   A designated person may "seek administrative reconsideration" of his designation and request to be removed, or "delist[ed]," from the Specially Designated Nationals and Blocked Persons List.[2] *Zevallos v. Obama*, 793 F.3d 106, 110 (D.C. Cir. 2015) (citing 31 C.F.R. § 501.807). A request for reconsideration may include arguments or evidence rebutting the Treasury's "basis ... for the designation," or "assert that the circumstances resulting in the designation no longer apply." *Id.* (citing § 501.807, 807(a)). The designated person must argue that whatever led Treasury to designate him a SDNT was never true or is no longer true. When the designation is challenged, OFAC will "conduct[ ] a review of the request for reconsideration" and "provide a written decision to the blocked person." *Id.* (citing § 501.807(d)). Valencia-Trujillo has failed to identify how counsel should or could have challenged his SDNT designation. Even if counsel had been successful in removing Valencia-Trujillo from the SDNT list, it is pure speculation that Valencia-Trujillo would have been able to secure sufficient funds to

---

[2] Included on this list are specially designated nationals, specially designated terrorists and specially designated narcotics traffickers.  31 C.F.R. § 501.807(a).

retain private counsel for the duration of his lengthy prosecution.

Valencia-Trujillo claims that *Luis v. United States*, 136 S. Ct. 1083 (2016) -- a decision issued more than ten years after he was extradited and five years after he filed his section 2255 motion -- entitles him to a new trial. In *Luis,* the Supreme Court held that the government violated a petitioner's Sixth Amendment right to have counsel of choice by freezing indisputably "untainted funds, *i.e.*, funds not connected with the crime" prior to trial. *Id.* at 1087-88. *Luis*, however, does not apply retroactively to cases on collateral review such as Valencia-Trujillo's. *See Thaw v. United States*, 3:15-cv-2920-G-BN, 2016 WL 4623053 (N.D. Tex., Aug. 16, 2016) (petitioner failed to explain why the court should find

that *Luis* applies retroactively to cases on collateral review); *Noel v. United States*, 1:16-cv-

406-RLV, 2017 WL 548985 (W.D. N.C., Feb. 8, 2017) (same).

"Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310 (1989). Such rules are retroactive only if the rule is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. The Supreme Court has instructed that a new rule qualifies for watershed status only if it (i) is necessary to prevent an impermissibly large risk of an inaccurate conviction and (ii) alters our understanding of the bedrock procedural

elements essential to the fairness of a proceeding. *Luis* does not meet those stringent standards.

With the exception of eleven horses, Colombian authorities seized virtually all of Valencia-Trujillo's assets. (Doc. cr-49 at Exhibit B; Doc. cr-262 at 2). In late 2003, counsel sought OFAC approval to sell those eleven horses in the United States so Valencia-Trujillo could use the proceeds to retain private counsel. (*See* Doc. cr-262 for a detailed description of the actions taken by Neil M. Schuster and Matthew Farmer.) In late September 2005, OFAC advised counsel that, although Valencia-Trujillo could not sell the horses in the United States, he could request a license to sell the horses outside of the United States. (Doc. cr-282 at 13). Valencia-Trujillo's counsel's unsuccessful attempts to obtain a license from OFAC that would permit selling the horses in the United States so he could secure retained counsel cannot be deemed ineffective. Furthermore, Valencia-Trujillo does not explain how *Luis* applies retroactively on collateral review.

Ground three does not warrant relief.

### Ground Four

Valencia-Trujillo claims that counsel was ineffective for failing to challenge the admission of Fed. R. Evid. 801(d)(2)(E) co-conspirator testimony. (Doc. cv-1 at 14-15). He asserts that this alleged failure affected "virtually all testimony of all co-conspirators (sic)" and that the "cumulative effect" caused him unspecified prejudice. Although Valencia-Trujillo mentions the "vicarious testimony" of three individuals, he

provides no details nor identifies any specific instances where counsel should have made this challenge and stated how this affected the outcome of the trial.

It is well established that pro se complainants are held to less stringent pleading standards than those applicable to lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Government, and the Court, however, cannot make assumptions as to the intent of claims raised by a 2255 petitioner. *See Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008) ("Although we liberally construe pro se filings, we do not assume the role of advocate." (internal quotation marks omitted)). Accordingly, claims not fairly raised will not be entertained on collateral attack. *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980); *Walker v. Dugger*, 860 F.2d 1010, 1011 (11th Cir. 1988) (claims raised only superficially will not be treated as properly raised). Claims that lack specificity should be dismissed without further consideration. *Jones,* 614 F.2d at 81-82 (district court justified in dismissing section 2255 petitioner's claims when petitioner presented only conclusory allegations to support claims).

Likewise, vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.

1991); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (vague, conclusory

allegations in a § 2255 motion are insufficient to state basis for relief); *see also*

*Saunders v. United States*, 278 F. App'x. 976, 979 (11th Cir. 2008) (petitioner must allege "reasonably specific, non-conclusory facts with respect to his claim such that there was a reasonable probability sufficient to undermine confidence in the outcome.").

At the heart of most conclusory dismissals is the fatal failure by a petitioner to link his claim to the facts of his case. In *Walker v. Dugger*, the Eleventh Circuit reversed the lower court's finding that the petitioner "implicitly raised an *ex post facto* claim" in his habeas petition merely by citing cases involving that issue. The Court noted that even when a pro se litigant is involved, "it is unreasonable to hold that a party has been put on

fair notice of a claim simply because the opposing party has cited cases in a supporting that involve the claim." 860 F.2d at 1011; *see also Moss v. United States*, 8:09- cv-2463-T-17TGW, 2010 WL 4056032*7 (M.D. Fla., Oct. 15, 2010) (noting that pro se litigants must "fairly raise" claims to give the responding party a "fair opportunity to respond" to such claims).

In *Tejada v. Dugger*, the petitioner, convicted of premeditated murder and burglary,

raised a variety of ineffective assistance claims similar to those raised by Valencia-Trujillo

including failure to impeach witnesses, failure to apprise the trial court of discovery violations, failure to investigate material facts, failure to object to impermissible

statements made during closing, and failure to investigate possible witness intimidation. 941 F.2d at

n.13. Noting that these alleged acts and omissions were "within the realm of strategic or tactical decisions," the court found that the unsupported claims were conclusory and lacked factual substantiation. *Id.* at 1559. Accordingly, they did not entitle the petitioner to an evidentiary hearing nor did they establish ineffective assistance of counsel. *Id.* Similarly, in *Caderno*, the court found that counsel was not ineffective for failing to seek a new trial based on Caderno's speculation that a conversation between a juror and court security employee was inappropriate. 256 F.3d at 1217.

Likewise, Valencia-Trujillo's claims are vague and conclusory and ground four does not warrant relief.

### Ground Five

Valencia-Trujillo asserts that the United States violated *Brady, Jencks*, and *Giglio*

with respect to "numerous witnesses," and that these violations were unchallenged by his counsel, resulting in ineffective cross-examination, failure to strike the testimony of these unidentified witnesses, and failure to seek a curative jury instruction. (Doc. cv-1 at 20). Valencia-Trujillo claims this error occurred with numerous witnesses but fails to identify a single witness or incident that could and should have been successfully challenged by counsel.

This claim is vague and conclusory, and ground five does not warrant relief.

**Ground Six**

Valencia-Trujillo claims that counsel was ineffective for challenging the "perjurious extradition affidavit" of Special Agent Rod Huff under the Fourth instead of the Fifth Amendment. (Doc. cv-1 at 21). His claim is purely speculative at best and was denied after briefings and oral argument. (Docs. cr-352, 361-1, 379 and 386).

Valencia-Trujillo does not specify challenges or successful arguments that should have been raised under the guise of the Fifth Amendment. Nor does he unequivocally prove that, had they been raised, this Court or the Eleventh Circuit would have provided him with the relief he now seeks. More significantly, the Magistrate Judge found that Valencia-Trujillo "has not established that a *Franks v. Del.*, 438 U.S. 154 (1978) violation can invalidate an order of extradition by a foreign court surrendering a Defendant to face charges in the U.S." (Doc. cr-386 at 12). Regardless of the Constitutional Amendment, a

*Franks* violation would be unsuccessful in challenging an extradition order.

Ground six does not warrant relief.

**Ground Seven**

Valencia-Trujillo alleges that counsel was ineffective for failing to move to dismiss the indictment due to presentation of false testimony and evidence before the grand jury. (Doc. cv-1 at 22). Although Valencia-Trujillo contends that the United States knowingly presented false testimony and evidence to the grand jury, he does

not identify a single instance where this occurred.

More importantly, no grand jury transcripts were disclosed during the prosecution of the case, as no witnesses testifying at trial appeared before the grand jury. Valencia-Trujillo attempted to obtain the grand jury transcripts post-trial and was unsuccessful. (Docs. cr-1016, 1018, 1019, 1024, 1029, 1033). Valencia-Trujillo appealed to the Eleventh Circuit, which affirmed the district court's ruling denying the transcripts. (Docs. cr-1034, 1052).

Ground seven does not warrant relief.

### Ground Eight

Valencia-Trujillo claims that counsel was ineffective for failing to raise a mistaken identity challenge, seek a mistaken identity jury instruction, and argue that he withdrew from the conspiracy based on the testimony of Monica Velilla. (Doc. cv-1 at 23). Valencia-Trujillo claims that he was entitled to a mistaken identity instruction because Velilla testified about a cocaine package marking purportedly linked to another source.  However, he fails to provide any citation of the record to support this assertion. Velilla briefly testified during cross-examination about "Christmas tree wrapping." (Doc. cr-879 at 138-39). She stated that the wrapping represented a laboratory but she did not recall who had access to the laboratory. (Id. at 139).

"A defendant is generally entitled to a jury instruction relating to his theory of the defense if, when viewed in the light most favorable to the accused, the evidence

supports the theory." *United States v. Richardson*, 532 F.3d. 1279, 1289-90 (11th Cir. 2008). To the extent Valencia-Trujillo claims his assertion constitutes a defense theory meriting a jury instruction, he fails to support that assertion and cannot prevail on his claim that counsel was ineffective. Likewise, he provides virtually no support for his assertion that he withdrew from the conspiracy and was entitled to a jury instruction on this issue.

Valencia-Trujillo fails to identify any action he took to defeat the aims of the conspiracy or that he communicated those actions to his co-conspirators (or to law enforcement). *See United States v. Finestone*, 816 F.2d 583, 589 (11th Cir. 1987 ("To establish that he withdrew from a conspiracy, the defendant must prove that he undertook affirmative steps, inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objections, and either communicated those acts in a manner reasonably calculated to reach his co-conspirators, or disclosed the illegal scheme to law enforcement authorities."). Ceasing activity in the conspiracy does not establish withdrawal. *See e.g.*, *Hyde v. United States*, 225 U.S. 347, 369 (1912); *United States v. Badolato*, 701 F.2d 915, 921 n. 4 (11th Cir. 1983). As a result, it was reasonable for defense counsel not to seek a withdrawal jury instruction. Strategic choices of counsel about what to investigate are evaluated for their reasonableness, and "counsel's reliance on particular lines of defense to the exclusion of others -- whether or not he investigated those other defenses -- is a matter of strategy and is not ineffective unless the petitioner can prove the chosen

course, in itself, was unreasonable." *Chandler*, 218 F.3d at 1318 (quoting *Strickland,* 466 U.S. at 690-91); *see also Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000) (Counsel's decision not to investigate a certain defense need only be reasonable.).

Ground eight does not warrant relief.

### Ground Nine

Valencia-Trujillo alleges that counsel was ineffective for failing to seek dismissal of two of the conspiracy counts, which he contends are lesser-included offenses of the CCE conviction. (Doc. cv-1 at 24). Further, if the conspiracy counts had been dismissed, he would not have been assessed a special assessment for those counts. (Id).

Count One alleged that Valencia-Trujillo conspired to import cocaine into the United States in violation of 21 U.S.C. §§ 960 and 963. (Doc. cr-1 at 1-7). Count Two alleged that Valencia-Trujillo conspired to possess with intent to distribute and distribution of cocaine in violation of 18 U.S.C. §§ 841, 846, and 959. (Id. at 7-8; Doc. cr-1011 at 4-5). Count Three alleged that Valencia-Trujillo conducted a CCE in violation of 21 U.S.C. § 848(a) during which he violated several federal laws, "including but not limited to, Sections 841, 843(b), 846, 952, and 963." (Doc. cr-1011 at 5). Count Four alleged conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1), (a)(2) and (h). (Doc. cr-1). Count four is not part of the CCE violation.

Following his conviction on all four counts, Valencia-Trujillo was sentenced to a total of 480 months incarceration as stated *above*. He was also sentenced to 60 months supervised release and required to pay a special assessment of $400.00. (Id. at 3, 5).

Relying on *Rutledge v. United States*, 517 U.S. 292 (1996), Valencia-Trujillo claims that counsel was ineffective for failing to move to dismiss two of his conspiracy convictions and the imposition of a special assessment for those two counts. In *Rutledge*, the Supreme Court held that conspiracy under section 846 is a lesser-included offense of maintaining a CCE, a violation of section 848. 517 U.S. at 307. The Court also held that a special assessment constitutes "punishment" and imposition of a special assessment for convictions under both sections 846 and 848 are cumulative punishment not authorized by Congress. *Id.* at 301, 303.

Accordingly, pursuant to *Rutledge,* the United States agrees that the conspiracy counts and their related special assessments must be vacated and Valencia-Trujillo must be resentenced.

**Ground Ten**

Valencia-Trujillo argues that counsel was ineffective for failing to object to the Court's jury instruction regarding their consideration of pre-December 17, 1997, evidence. (Doc. cv-1 at 25-28). This Court, after extensive pre-trial litigation regarding limits placed on the United States by Colombia, crafted a limiting instruction.

Prior to deliberations, the jury was instructed:

You are instructed that you cannot find the defendant guilty of any of the offenses charged in Counts One through Four of the indictment unless you find that the charge has been proved beyond a reasonable doubt with evidence of the defendant's conduct that occurred after December 17, 1997.

(Doc. cr-932 at 133).

Jurors are presumed to follow the law as instructed by the trial court and to comply with their oaths. *United States v. Lopez*, 649 F.3d 1222, 1237 (11th Cir. 2011) ("We presume that juries follow the instructions given to them."); *United States v. Siegelman*, 640 F.3d 1159, 1184 (11th Cir. 2011) (same); *United States v. Townsend*, 630 F.3d 1003, 1013-14 (11th Cir. 2011) (same); *United States v. Almanzar*, 634 F.3d 1214, 1223 (11th Cir. 2011) (same). Valencia-Trujillo's allegations that the instruction was improper because it somehow confused the jury is unsupported and does not demonstrate deficient performance by counsel.

Ground ten does not warrant relief.

**Grounds Eleven and Twelve**

At Ground Eleven, Valencia-Trujillo alleges that appellate counsel should have challenged the cross-examination limits placed on government witness Phanor Caicedo Ramos. (Doc. cv-1 at 29-30). Valencia-Trujillo contends in a related claim at Ground Twelve, that the United States knew Ramos would invoke his Fifth Amendment right, depriving Valencia-Trujillo of "meaningful adversarial testing via

the confrontation process" by not allowing trial counsel to explore Ramos' "incentive to testify." (Id. at 30). These claims are without merit.

The Fifth Amendment's self-incrimination clause provides that no person "shall be compelled in any criminal case to be a witness against himself." *United States v. Smith*, 157 F. App'x. 215, 217 (11th Cir. 2005) (quoting U.S. Const. amend. V). This prohibition permits a person to refuse to answer official questions at any proceeding where his answers might incriminate him in future criminal proceedings. *Id.* (citing *Minn. v. Murphy*, 465 U.S. 420, 426 (1984)). In deciding whether or how much testimony to exclude under a Fifth Amendment privilege claim, the district court examines: (1) whether the witness's fear of self-incrimination is well founded; (2) the parameters of the witness's Fifth Amendment rights in context of the testimony sought; and (3) the materiality and relevancy of the potentially excluded testimony. *Id.* at 218 (citing *United States v. Melchor Moreno*, 536 F.2d 1042, 1049-50 (5th Cir. 1976)).

On direct examination, Ramos testified about his involvement with three murders. *(See* generally Doc. cr-903.) Valencia-Trujillo's trial counsel deferred cross-examination to require the United States to produce additional discovery materials. (Id. at 11). Prior to cross-examining Ramos and out of the jury's presence, Valencia-Trujillo's trial counsel asked Ramos several questions to which he invoked his Fifth Amendment right. (Doc. cr-913 at 29, 32-34, 36, 400). This Court then

specifically instructed Ramos not to invoke his Fifth Amendment right in front of the jury.[3] (Id. at 41).

Trial counsel opened his cross-examination of Ramos by asking about the murders of Juan Acosta, Luis Escobedo, and Bernardo Gonzalez, eliciting an admission from Ramos that he was punished by the federal government for only one of the three murders. (Id. at 44-49). For two days, trial counsel cross-examined Ramos about his convictions and sentences, involvement in and profit from the narcotics trade, involvement in murder-for-hire and debt collection activities, and involvement in other criminal activities. (Doc. cr-913 at 49-113; Doc. cr-935 at 22-61). At the close of cross-examination, this Court stated, "And I think that [trial counsel] had an opportunity for adequate, reasonable, and sufficient cross-examination of this witness to extract from him issues and points on his credibility in front of this jury." (Id. at 61). Valencia-Trujillo has not shown that appellate counsel was ineffective for failing to challenge the cross-examination limits placed on government witness Phanor Caicedo.

Grounds eleven and twelve do not warrant relief.

## Ground Thirteen

Valencia-Trujillo contends that appellate counsel was ineffective for failing to seek rehearing by panel or *en banc* of his non-treaty Rule 404(b) issues following the

---

[3] At the start of the second day of cross-examination, after hearing argument from counsel, this Court reiterated its ruling that Ramos was not to invoke his Fifth Amendment right in the presence of the jury. (Doc. cr-935 at 4-9).

court's ruling on direct appeal. (Doc. cv-1 at 31). The record contradicts this claim.

Appellate counsel did seek rehearing *en banc*, which was denied on September 24, 2009. *United States v. Valencia Trujillo*, 373 F. App'x. 43 (11th Cir. 2009).

Ground thirteen does not warrant relief.

### Grounds Fourteen and Twenty-Two

These claims arise from counsel's alleged failure to raise a due process challenge to and seek exclusion of the accounting records of Reynaldo Avenia-Soto (Ground Fourteen) and to challenge the forensic evidence regarding those records (Ground Twenty-Two). (Doc. cv-1 at 32, 40). Neither claim entitles Valencia-Trujillo to any relief.

Prior to trial, Valencia-Trujillo's counsel filed a motion in *limine* to preclude the testimony of United States' witness Avenia-Soto pursuant to Fed. R. Evid. 803(b) and 1006. (Doc. cr-443). That motion was denied and then revisited orally prior to Avenia-Soto's testimony. *(See* generally Doc. cr-882). The United States argued that the records of Avenia- Soto, an accountant for Invermarp, were business records not kept by a records custodian but kept by the "record maker." (Id. at 28). They were "records of co-conspirator statements made during the course of the conspiracy of the illegal enterprise in furtherance of the conspiracy[.]" (Id.). The records included evidence of direct involvement by Avenia-Soto collecting and receiving payments, giving instructions, and authorizing expenditures. (Id. at 28-29). These records,

originally created in coded Spanish, were decoded and translated by Avenia-Soto. (Id. at 29-33). This Court allowed the documents to be admitted subject to the United States laying a proper foundation and after Avenia-Soto testified about each uncoded document. (Id. at 35-37, 41-44).

Counsel's request for the re-reading of a limiting instruction regarding consideration of pre-1997 conduct was granted and the jury was given that instruction just before Avenia-Soto took the stand. (Doc. cr-883 at 4-8, 17-18). Avenia-Soto testified that he started working at Invermarp, a fishing business, as an intern. (Id. at 24, 27). He learned from his father that Invermarp was involved in cocaine smuggling. (Id. at 30). Eventually he started to keep records pertaining to drug smuggling operations including a list of vessel captains and crew members as well as details for specific ventures. (Id. at 31-33). The records, initially kept in notebooks, were later prepared with a computer. (Id. at 42-43). Following the arrests of Jose Castrillon and Pedro Navarrete, Avenia-Soto began meeting with Valencia-Trujillo. (Id. at 130-31). Avenia-Soto brought the most current accounting worksheet to that meeting, (id. at 134-35), and then began meeting with Valencia-Trujillo

regularly. (Id. at 142-43). Avenia-Soto was later indicted and began to cooperate. (Id. at 220-22.

Avenia-Soto kept the records on floppy disc, hidden at his father's farm. (Id. at 222-

23). Once the records were located, they were emailed to Avenia-Soto who opened

the email, copied the files to the computer, and then copied the files to a disc for investigators. (Id. at 226-28). The records consisted of six separate files related to Valencia-Trujillo's drug business. (Id. at 228-30). Avenia-Soto explained -- at length -- the various entries and codes on these documents. (Id. at 247-265; Doc. cr-884; Doc. cr-885 at 14-94, 100-145).

On cross-examination, counsel questioned Avenia-Soto extensively about differences between the records and his testimony in Valencia-Trujillo's trial, and testimony he gave at prior trials about those records. *(See* generally Doc. cr-885 at 149-218; Doc. cr-895 at 119-143.) Counsel also questioned the accuracy and authenticity of Avenia-Soto's

records during his closing argument. (Doc. cr-931 at 129-130).

Contrary to Valencia-Trujillo's claim, counsel did attempt to exclude the testimony of Avenia-Soto. At trial, counsel attempted to impeach Avenia-Soto through extensive cross-examination, pointing out numerous differences between the accounting records and testimony Avenia-Soto gave at prior trials.

Valencia-Trujillo's claim that "forensic evidence existed showing that the records had been manipulated" and "at odds" with Avenia-Soto's trial testimony, (Doc. cv-1 at 40), is unsupported as he fails to provide detail about such evidence. Valencia-Trujillo fails to demonstrate deficient performance on the part of counsel.

Grounds fourteen and twenty-two do not warrant relief.

### Ground Fifteen

Valencia-Trujillo claims that counsel was ineffective because he failed to move to exclude the admission of an "unduly suggestive" photo array at trial. (Doc. cv-1 at 33). He states that at page 22 of the July 17, 2006, trial transcript, the United States introduced an unduly suggestive photo array depicting six men, in violation of Valencia-Trujillo's due process rights. (Id.). The record contradicts Valencia-Trujillo's claim.

Prior to trial, counsel moved to suppress a photo array, photograph identification, and moved to prohibit in-court identification of Valencia-Trujillo by identifying witnesses. (Doc. cr-240). The photo array was described as a one-page black and white copy of photographs of six men, two wearing "jail garb." (Id. at 1-2). Counsel argued that use of this photo array for identification purposes was unduly suggestive and unreliable. (Id. at 3-4). Following a response from the United States, (Doc. cr-254), counsel withdrew the motion. (Doc. cr-256).

On the morning on July 17, 2006, the United States called John Kane, an agent with the Department of Homeland Security. (Doc. cr-881 at 9-10). Agent Kane testified about his participation in the surveillance and arrest of Monica Velilla. (Id. at 11-69). Several photographs were identified by Kane and admitted, but they did not include a photo array or identification of Valencia-Trujillo. (*See* Doc. 772 at 12-13.) Although the United States' exhibit list does contain entries described as "photo array" of Valencia-Trujillo, none of those exhibits were identified or admitted during trial. (Doc. cr-772 at 11 [exhibits 146a, 146b, and 148]).

The record contradicts Valencia-Trujillo's claim. Even if the photo array had been entered into evidence, however, counsel cannot be deemed ineffective given the number of individuals who specifically identified Valencia-Trujillo during trial.

Ground fifteen does not warrant relief.

## Ground Sixteen

Valencia-Trujillo argues that counsel failed to raise Rule 404(b) objections and failed to ask for a Rule 403 ruling regarding evidence that was not part of the charged conspiracy. (Doc. cv-1 at 34). This claim is devoid of any meaningful discussion or factual support aside from the mere citation to one page in one volume of the trial transcript.

Ground sixteen does not warrant relief.

## Ground Seventeen

Valencia-Trujillo alleges appellate counsel was ineffective for failing to appeal this Court's Rule 801(d)(2)(E) ruling regarding his Colombian counsel. (Doc. cv-1 at 35). Valencia-Trujillo fails to explain how counsel's tactical decision not to raise this issue on

direct appeal was deficient or caused him prejudice.

### The Issue

During the testimony of Ramon Orozco-Mejia, the United States introduced a letter from Isabel Valencia Castano, Valencia-Trujillo's family member and a

Colombian lawyer.[4] (Doc. cr-877 at 15). The United States sought to admit the letter because, when the witness received it, he perceived it to be a threat. (Id. at 17-20, 28). Valencia-Trujillo's counsel unsuccessfully challenged admission of the letter. (Id. at 19, 21). On cross-examination, Orozco-Mejia agreed that Ms. Castano was simply asking for permission to visit with him, stated that he was not threatened while in jail in Colombia or the United States, and that although he initially perceived the letter to be threatening, he no longer considered it a threat because he was in the United States. (Id. at 32-37). The following day, trial counsel unsuccessfully moved to strike the letter, arguing that it lacked evidentiary value and was not relevant to the case. (Doc. cr-878 at 14-21). Trial counsel later elicited testimony from Orozco-Mejia that he was not threatened by anyone to force him to meet with Ms. Castano. (Id. at 37-38).

Valencia-Trujillo does not explain how counsel's tactical decision not to raise this issue on direct appeal was deficient or caused him prejudice.

Ground seventeen lacks merit and does not warrant relief.

### Ground Eighteen

Valencia-Trujillo asserts that counsel was ineffective for failing to raise challenges concerning the government's misconduct occurring during closing arguments. He alleges that Attorneys Ruddy and Chapa-Lopez misquoted evidence and/or quoted evidence not in the record, including in one instance, evidence to

---

[4] Exhibit 6 is her letter; Exhibit 7 is the English translation of Exhibit 6.

establish venue. Other than one generalized claim regarding the alleged murder (by Valencia-Trujillo) of Gustavo Calderon and "the Greeks," this claim lacks any factual support and does not prove to be prejudicial.

Although Valencia-Trujillo reserved the right to expand the factual bases for this claim once he had been granted leave to retain counsel from the OFAC, counsel did not expand this claim in the memorandum of law in support of Valencia-Trujillo's motion to vacate or in the reply to the United States' response to the motion to vacate.

Ground Eighteen does not warrant relief.

## Ground Nineteen

Valencia-Trujillo alleges that counsel was ineffective for failing to challenge the seizure of attorney-client privileged documents. (Doc. cv-1 at 37). To support this claim, he identifies one document, Exhibit 322, as an example of a privileged document improperly seized and introduced at trial by the United States. (Id.). Valencia-Trujillo contends, without support, that this document is a "private record, neither publically available nor provided as reciprocal discovery[.]" (Doc. cv-1 at 37).

Documents were taken from Valencia-Trujillo's investigator as he returned from Colombia to the United States. (Docs. 418, 421 at 2). A taint team at the United States Attorney's Office kept the documents under seal to ensure that they were not accessible to the prosecution team. (Docs. cr-401, 420, 421 at 5). At a lengthy evidentiary hearing, the United States advised that the seized documents were

returned to the defendant and no copies were retained. (Doc. cr-408). Due to counsel's concern that his and investigator George Scott's continued representation would constitute a *McLain*[5] violation, a third attorney, Bruce Howie, was appointed. (Doc. cr-462).

A *McLain* hearing was conducted at which Valencia-Trujillo was present. (Doc. cr-468). After being advised of his right to conflict-free counsel, speaking with Mr. Howie, and participating in the *McLain* hearing, Valencia-Trujillo affirmed that he wanted Attorneys Farmer and Scott to continue to represent him. (Doc. cr-465).

### The Issue

At trial, the defense called Luz Estella Lozano. Ms. Lozano was an employee of Unipapel, a paper-manufacturing mill, and was responsible for overseeing shipments in 1993. (Doc. cr-922 at 74, 77). The United States initially challenged Ms. Lozano's appearance, arguing that they had received no notice that she would testify. (Id. at 75). Counsel stated that the United States did have notice because "she's on all the documents for the '93 shipment," noting that the defense "provided these documents for them, which has her name all over them." (Id.).

On direct examination of Ms. Lozano, defense counsel entered two Unipapel-related exhibits, numbered 183 and 184. (Doc. cr-922 at 83, 88, 100, 104). Exhibit 183 was a fourteen page composite exhibit; Exhibit 184 contained two pages. (Id. at 83, 100). Exhibit 322 is a document from Unipapel. (Doc. cr-772 at 24; Doc. cr-798

---

[5] *United States v. McLain*, 823 F.2d 1457 (11th Cir. 1987).

at 55). On cross- examination, Ms. Lozano explained that Exhibit 322 was a letter acknowledging that an Unipapel shipment to Sweet Paper was going to be 29 boxes short due to lack of space in the shipping container. (Doc. cr-928 at 135-138; Doc. cr-799 at 16-17).

Valencia-Trujillo offers nothing but speculation that taint team procedures were violated and that this exhibit originated from the documents taken from the inspector rather than from reciprocal discovery materials. When a petitioner offers nothing more than speculation to support his ineffective assistance claim, that speculation is insufficient to obtain relief. *See Johnson v. Ala.*, 256 F.3d 1156, 1183 (11th Cir. 2001) (rejecting ineffective assistance claim where there was "no logical basis" and "little evidentiary foundation" to support a finding of prejudice). Even  if counsel were somehow deficient because this document was presented to the jury, in light of the overwhelming evidence of guilt introduced at trial, Valencia-Trujillo cannot establish that he suffered any prejudice based on the admission of this single exhibit.

Ground nineteen does not warrant relief.

### Ground Twenty

Valencia-Trujillo claims that the United States committed "numerous" Jencks/Giglio and Rule 16 violations (Doc. cv-1 at 38), and counsel was ineffective for not raising the claims regarding these violations. Although he asserts that these violations occurred "repeatedly," like his similar claim at Ground Five, he fails to offer to a single instance to support his claim.

Ground twenty does not warrant relief.

## Ground Twenty-One

Valencia-Trujillo claims that counsel was ineffective for failing to argue that the United States violated his right to present a complete defense. This claim is unsupported. (Doc. cv-1 at 39). Valencia-Trujillo alleges that the United States "threatened defense witnesses with retaliation" if they testified. However, he fails to identify witnesses who refused to testify due to these alleged threats. Although he claims that the fact that the United States was threatening witnesses was placed on the record -- a claim that appears to undercut his ineffective assistance allegation -- he does not cite to any instance in the record where such assertion was made.

Valencia-Trujillo fails to identify -- or to establish -- witness intimidation or inability to
present a complete defense. This claim is unsupported and fails to meet either prong of *Strickland.*

Ground twenty-one does not warrant relief.

## Ground Twenty-Three

Valencia-Trujillo makes a "cumulative error" ineffective assistance claim, asserting that when considered in total, counsel's alleged ineffectiveness "rendered the trial process fundamentally unfair" and caused unspecified "actual prejudice." (Doc. cv-1 at 41).

Cumulative error analysis should evaluate only matters determined to be in

error, not the cumulative effect of non-errors. *See United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); *see also Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012); *United States v. Waldon,* 363 F.3d 1103, 1110 (11th Cir. 2004); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero."); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of [] [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").

The cumulative error principle may be applied to a postconviction claim of ineffective assistance of counsel. *Durham v. McNeil*, No. 3:06cv196 RVEMT, 2009 WL 1940569 at *25 (N.D. Fla., 2009). "For the totality of the errors to warrant collateral relief, Defendant must show that the circumstances rendered the trial fundamentally unfair." *United States v. Battle*, 264 F. Supp. 2d 1088, 1209 (N.D. Ga. 2003) (denying section 2255 claim of cumulative error). A defendant is entitled to a fair trial, not a perfect one.

*United States v. Adams*, 74 F.3d 1093, 1099-1100 (11th Cir. 1996). Virtually none of Valencia-Trujillo's claims establish error or ineffective assistance of counsel. His conclusory assertion of cumulative error, without more, has no merit and ground twenty-three does not warrant relief.

## Ground Twenty-Four

Similar to his claim at Ground Sixteen, Valencia-Trujillo argues that counsel was ineffective for failing to lodge Rule 404(b) objections to "virtually every witness" during trial and on appeal. (Doc. cv-1 at 42). Valencia-Trujillo's list of Rule 404(b) related issues includes improper use of such evidence and failure to provide notice. (Id.). His claims, however, do not contain one example of such misconduct nor identify one instance where his counsel failed to challenge a purported 404(b) violation.

Ground twenty-four does not warrant relief.

## Ground Twenty-Five

Valencia-Trujillo challenges his counsel's failure to request a multiple conspiracy jury instruction. (Doc. cv-1 at 43). Valencia-Trujillo claims, without any support, that  there was

"virtually no evidence" that the "New York Conspiracy" and the "Florida conspiracy" were a single overarching conspiracy -- in other words, a material variance. (Id.). Valencia-Trujillo is not entitled to relief because he has failed to demonstrate any prejudice as a result of counsel's failure to request a multiple conspiracies instruction.

"To determine whether a jury could reasonably have found that [the] evidence established a single conspiracy beyond a reasonable doubt, [this court] must consider: (1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants." *Richardson*, 532 F.3d at 1284 (citing *United States v. Moore,* 525 F.3d 1033, 1042 (11th Cir. 2008)). A jury may find that a single conspiracy exists when a "key man" directs and coordinates the activities and efforts of various combinations of people. *Id.* at 1286 (citing *United States v. Edouard*, 485 F.3d 1324, 1347 (11th Cir. 2007)); *United States v. Nunnally*, 249 F. App'x. 776, 779 (11th Cir. 2007) (same). To prove a single conspiracy, the United States must show an interdependence among the co-conspirators. *Nunnally*, 249 F. App'x. at 779 (citing *United States v. Chandler*, 388 F.3d 796, 811 (11th Cir. 2004)). Separate transactions do not constitute multiple conspiracies provided the conspirators act in concert to further a common goal. *Id.* "'It is often possible, especially with drug conspiracies, to divide a single conspiracy into sub-agreements. . . . This does not, however, mean that more than one conspiracy exists. The key is to determine whether the different sub-groups are acting in furtherance of one overarching plan.'" *United States v. Calderon,* 127 F.3d 1314, 1329 (11th Cir. 1997).

A material variance would result only if there is no evidentiary foundation for the jury's finding of a single conspiracy. A conviction will not be reversed because a single conspiracy is charged in the indictment while multiple conspiracies may have been revealed at trial unless there is a variance that is (1) material and (2)

substantially prejudices the defendant. *Richardson*, 532 F.3d at 1284 (11th Cir. 2008) (citing *Edouard*, 485 F.3d at 1347; *Nunnally*, 249 F. App'x. at 779 (same)). Valencia-Trujillo has failed to identify any support for his claim that the New York and Florida "conspiracies" were not part of the overarching conspiracy charged in the superseding indictment.

Valencia-Trujillo was identified as the source of supply for the New York and Florida cocaine trafficking activity. Generally, a multiple conspiracy instruction is required where an indictment charges several defendants with one overall conspiracy but the proof at trial shows that a jury could reasonably conclude that some defendants were involved only in separate conspiracies unrelated to the overall conspiracy charged in the indictment. *Calderon*, 127 F.3d at 1328 (emphasis in original) (other citation omitted). Valencia-Trujillo was charged and tried alone. Notably, "at least one circuit court considers a multiple conspiracies instruction inappropriate in the trial of a single defendant." *Richardson*, 532 F.3d at 1290-91 (citing *United States v. Corey*, 566 F.2d 429, 431 n. 3 (2nd Cir. 1997) (other citation omitted)). The *Richardson* court found no case in the Eleventh Circuit holding that a district court erred by not delivering the multiple conspiracies instruction in a single-defendant case. *Id.*

A multiple conspiracy jury instruction is not required if the evidence supports a finding of only a single conspiracy, as charged. *Id.* at 1329 (citations omitted). Even where a multiple conspiracies jury instruction was required, however, failure to give

it is not reversible error unless a defendant can show substantial prejudice. *United States v. Tipton*, 90 F.3d 861, 883 (4th Cir. 1996). To find prejudice, a court would have to "conclude that the evidence of multiple conspiracies was so strong in relation to that of a single conspiracy that the jury probably would have acquitted on the conspiracy count had it been given a cautionary multiple-conspiracy instruction." *Id.*

When viewed in the light most favorable to the United States, the evidence presented at trial established that Valencia-Trujillo headed a drug trafficking organization with a common goal: trafficking cocaine both nationally and internationally. As the Eleventh Circuit held in affirming Valencia-Trujillo's convictions and sentences on direct appeal, the defendant was fairly tried and convicted. The CCE charge incorporates all other charged criminal conspiracies, hence a multiple conspiracy instruction in a single defendant CCE trial is not only unforeseeable but a virtual impossibility. Either the sole defendant charged was a participant in the charged conspiracy or not.

Even if counsel were deficient, Valencia-Trujillo has failed to demonstrate any prejudice -- much less substantial prejudice -- as a result of counsel's failure to request for a multiple conspiracies jury instruction.

Ground twenty-five does not warrant relief.

### Ground Twenty-Six

Valencia-Trujillo contends that counsel was ineffective for withdrawing the request a special jury instruction on multiple theories of guilt as to Count Four,

conspiracy to commit money laundering. (Doc. cv-1 at 44).

Valencia-Trujillo has not demonstrated that counsel's decision not to pursue this jury instruction was anything other than trial strategy. Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a  decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright,* 709 F.2d 1443, 1445 (11th Cir. 1983). In deciding an ineffective assistance claim, a court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland,* 466 U.S. at 690. Accordingly, Valencia-Trujillo has failed to establish that counsel was ineffective.

Ground twenty-six does not warrant relief.

## Ground Twenty-Seven

Valencia-Trujillo claims that his counsel was ineffective for failing to object to his prosecution for extraterritorial acts under 18 U.S.C. § 1956.  Valencia-Trujillo claims that the conviction was improperly based on his purchase of a banana plant and that counsel was ineffective for failing to object to the admission of that evidence. (Doc. cv-1 at 45). Valencia-Trujillo does not cite to anything in the record to support this claim and does not identify how this counsel's lack of action constitutes prejudice as required by *Strickland*.

Ground twenty-seven does not warrant relief.

## Ground Twenty-Eight

Valencia-Trujillo alleges that counsel was ineffective for failing to challenge the United States' improper theory that a conspiracy's span is extended "commensurate" with any period during which an outstanding drug debt exists. Valencia-Trujillo claims:

> The Government's burden of proof was attended by two time-component considerations in that some of the offenses may have been charged beyond the statute of limitations; and secondly, there was the pre-17 December 1997 restriction on the use of act or fact based evidence. In each instance, the government was required to show the conspiracy extended beyond a certain point to carry that burden, the government allowed the jury to convict the defendant on the basis that an outstanding "drug debt" (repeatedly calling him "Mr. No Pay" and/or "Mr. Slow Pay") extended the duration of the conspiracy. Because this theory is one of pure fabrication and has no basis in law, counsel was ineffective for allowing the Movant to be convicted on this basis.

(Doc. cv-1 at 46). Valencia-Trujillo does not provide any details to support a claim of *Strickland* ineffective performance or prejudice.

Ground twenty-eight does not warrant relief.

## Ground Twenty-Nine

Valencia-Trujillo alleges that counsel was ineffective for failing to challenge the use of ten unspecified overt acts to extend the statute of limitations. (Doc. cv-1 at 47). Valencia- Trujillo claims that grand jury misconduct regarding these overt acts was known or should have been known to his counsel and that counsel's failure to challenge this Court's jurisdiction amounts to ineffective assistance. (Id.). Valencia-Trujillo fails to provide any specifics, nor does he identify the overt acts to which this claim pertains. This conclusory, unsupported claim has no merit.

Ground twenty-nine does not warrant relief.

## Ground Thirty

Valencia-Trujillo claims that counsel was ineffective for failing to challenge comments made by the United States during closing argument about an unidentified defense witness's

failure to look into the camera during video-teleconference testimony. (Doc. cv-1 at 48). Valencia-Trujillo claims these comments were disparaging, improper, and a violation of his Fifth and Sixth Amendment rights. (Id.). This claim, which is devoid of any factual support, is without merit.

A defendant is denied a fair trial if the prosecutor's closing remarks were improper and prejudicially affected the defendant's substantial rights. *United States v. Bernal-Benitez*, 594 F.3d 1303, 1313 (11th Cir. 2010). A defendant's substantial rights are "prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *Id.* Although it is improper for a prosecutor to bolster a witness's testimony by vouching for the witness's credibility, that rule does not prevent a prosecutor from commenting on a witness's credibility, which can be central to the United

States' case. *Id.* at 1313-14.

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense

after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

The failure to object during closing argument can almost never raise a colorable constitutional claim: "Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993). Whether to raise objections during closing argument is a strategic decision. *Walker v. United States*, 433 F.2d 306, 307 (5th Cir.1970) (because an objection may emphasize a particular remark to an otherwise oblivious jury, the effect of the objection may be more prejudicial than the original remark of opposing counsel); *United States v. Winters*, 530 F. App'x. 390 (5th Cir. June 20, 2013) (same).

There were three days of closing arguments. (Docs. cr-756, 758, 759). This Court began closing arguments by instructing the jurors to rely on their recollection of the evidence if it differed from that discussed by the attorneys.[6] (Doc. cr-930 at 9-10). The United States reiterated this instruction, (id. at 12-13), and spent the first day of closing argument explaining how the evidence it presented fit into the charged

---

[6] In its preliminary instructions, this Court told the jury that what the lawyers say in closing is not evidence. (Doc. cr-876 at 40-1). *See Smith v. United States*, 379 F. App'x. 811, 813 (11th Cir. 2010) (danger of inflammatory closing argument ameliorated, in part, by instructing jury that lawyer's arguments are not evidence).

offenses. *(See* generally Doc. cr-930.)

The following day, Valencia-Trujillo's counsel presented closing argument. *(See generally* Doc. cr-931.) Defense counsel commented that on cross-examination, United States' witness Exaudy Santos "wouldn't even look [counsel] in the face for 45 minutes." (Id. at 48). Counsel continued, "If you're walking into a courtroom to tell the truth, you should be afraid of nothing or anyone. You should look at people in the eye and just tell the truth." (Id.). Valencia-Trujillo's counsel contrasted Valencia-Trujillo's witnesses with those called by the United States, commenting that defense witnesses were not convicted felons or murderers, did not use false identification or aliases, were not in a witness protection program, were not paid for their cooperation nor facing a jail sentence. (Id. at 193). Counsel stated, "Not one [defense] witness avoided questions or tried to blame somebody else. And there was not one contradiction in testimony. And please remember, each one of their body language, there was no deception or fraud. Just genuine testimony. Genuine." (Id.). Counsel discussed "some important people" presented by the defense, (id. at 203-06), and specifically addressed Luz Estella, calling her "a very nice, credible, believable witness." (Id. at 209-11).

On rebuttal during the third day of closing argument, the United States noted that the defense used their closing argument to assess the United States' witnesses including their demeanor, statements, body language, and "[w]hether they squirmed [.]" (Doc. cr-932 at

48

9) . When Valencia-Trujillo's counsel objected to the United States' inadvertent mention that Freddy Malfa did not testify from the stand, this Court gave the following instruction regarding video conference testimony:

> I remind you that the testimony that was received from the video conferencing had the administration of an oath in another country and administration of an oath here by our clerk.
>
> You are to consider the testimony of witnesses who appeared by video conference the same as if those witnesses were present here in the courtroom. And as with all witnesses, give the witnesses' testimony such weight, if any, as you believe it deserves to have. Now, that's the Court's instruction.

(Id. at 12-15).

As part of rebuttal, the United States said that Lozano was caught in a lie. (Id. at 19). Valencia-Trujillo's counsel's objection to that statement was overruled. (Id.). The United States then continued, noting that Lozano wouldn't look straight into the camera. (Id.). The entire summary of Lozano's actions encompassed thirteen lines of text out of three volumes of transcripts.

The record reflects that both parties made comments assessing witnesses during closing arguments. These comments, which did not rise to vouching, were neither improper nor affected, in any way, the outcome of the trial. Given the extremely limited number of occurrences -- mere lines of transcript from three days of closing argument and the

overwhelming evidence -- counsel's "failure" to object was not deficient performance. Likewise, as noted above, the decision not to object is a strategic decision. Valencia-Trujillo has not established deficient performance nor resulting prejudice. This claim of ineffective assistance entitles him to no relief.

Ground thirty does not warrant relief.

## Ground Thirty-One

Valencia-Trujillo claims counsel was ineffective for failing to challenge the United States' remarks regarding defense witnesses' demeanor and the appearance of pressure exerted by Valencia-Trujillo to testify. (Doc. cv-1 at 49). Although Valencia-Trujillo did not specify where in the record this occurred, the following may be considered:

> And then Aura Pantoja, Freddy Mafla's secretary, young girl, obviously scared. You could see the palpable fear in her when asked questions about the goings on in Freddy Mafla's office.
>
> Ladies and gentlemen, all of these witnesses were feeling some kind of pressure obviously. They were either back paddling (sic) or fearful or afraid, feeling a need to -- like Ms. Estella -- Ms. Luz Estella to come up with an explanation once she was caught in a -- in obviously a lie.
>
> But the pressure wasn't coming from here in this courtroom. So I just ask you to ask yourselves where was the fear, the pressure, the stress coming from as those witnesses were testifying.

(Doc. cr-932 at 20).

As previously noted, comments made during closing argument alleged to be improper and to be a denial of a defendant's right to a fair trial must cause prejudice

affecting a defendant's "substantial rights." These comments made by the United States

on rebuttal do not rise to that level. Valencia-Trujillo has failed to establish that counsel's

failure to object was not a strategic decision. Likewise, Valencia-Trujillo does not show how he was prejudiced.

Ground thirty-one does not warrant relief.

## Ground Thirty-Two

Valencia-Trujillo asserts that appellate counsel was ineffective for relying on incorrect case law to support his argument that uncharged predicate acts had to be returned by the grand jury and proven beyond a reasonable doubt. (Doc. cv-1 at 50). Contrary to Valencia-Trujillo's claim, counsel did cite *Richardson v. United States*, 526 U.S. 813 (1999) in his appellate brief at Claim II. (*See* Exhibit A at 7, 13). Trial counsel was aware of *Richardson* even before the appellate brief was filed, as he cited it in his response in opposition to the United States' motion for reconsideration of the Court's order adopting the magistrate's Report and Recommendation. (See Doc. cr-198 at 10-11.)

The record belies this claim of ineffective assistance of appellate counsel. Further, the claim lacks merit.

Ground thirty-two does not warrant relief.

## Grounds Thirty-Three and Thirty-Four

At Ground Thirty-Three, Valencia-Trujillo claims that counsel was ineffective for failing to discover and present mitigating evidence at sentencing and failing to object to erroneous sentencing guideline calculations. (Doc. cv-1 at 51). Valencia-Trujillo does not identify what mitigating evidence counsel should have been presented or specify what guideline calculations were erroneous. In a related claim at ground thirty-four, Valencia-Trujillo alleges that counsel was ineffective for failing to challenge the use of pre- December 17, 1997, acts or facts, at sentencing. (Doc. cv-1 at 52). This alleged failure resulted in a sentence at the high end of the sentencing range. (Id.). The record contradicts

these claims.

At sentencing, counsel raised various objections to facts contained in the PSR which Valencia-Trujillo claimed were not offered at trial, or were pre-December 1997 events. For example, counsel objected to testimony from Mr. Gomez Maya, (Doc. cr-936 at 15-18), and

phone calls involving the New York portion of the case erroneously attributed to Valencia-

Trujillo. (Id. at 8-21). This Court concurred with the objection regarding the phone calls and

modified the PSR language. (Id. at 21-22). Counsel next objected to the inclusion of any information regarding pre-December 1997 events (PSR ¶¶ 20–29) as irrelevant. (Id. at 22).

Probation advised that such information was considered to be relevant conduct, but it was not used to calculate drug amounts during that time frame to determine the guideline range. (Id.). Counsel argued that consideration of pre-December 1997 relevant conduct was precluded by the Colombian government resolution. (Id. at 24-25). Probation again advised that only the predicate acts found by the jury were used to determine drug weight and quantity including pre-December 1997 evidence introduced at trial, which was considered by Probation as "background." (Id. at 26-27).

Counsel also objected to the use of pre-December 1997 information to determine the money-laundering loss. (Id. at 28-29). Probation noted that although the jury found Valencia-Trujillo guilty of money laundering, his guideline calculation was "driven by the drug amount." (Id. at 30). Probation reiterated that the guideline calculation was based only on the predicate acts that jury found were committed by Valencia-Trujillo. (Id.). Counsel also objected to PSR ¶¶ 31-34, arguing that paragraph 32 was "all pre '97" and irrelevant to the guideline calculation. (Id. at 33-34). Due to counsel's objections to paragraph 33, that paragraph was modified. (Id. at 36-37). The objection to paragraph 34, that the inclusion of smuggling ventures which were not linked to Valencia-Trujillo, involved transactions that were included in the PSR, but not used to calculate Valencia-Trujillo's guideline

sentence. (Id. at 37-49).

This Court ruled on each objection, (id. at 59-63), and adopted the undisputed factual statements and guideline applications in the PSR as well as Probation's position in the PSR Addendum. (Id. at 63). This calculation resulted in a total offense level of 44 and a criminal history category of I, with a guideline sentencing range of life imprisonment. (Id.).

Yolanda Morales, legal representative of the Colombian consulate's office, was present at the sentencing. (Id. at 64). She advised that she previously filed documents on behalf of the Colombian Minister of Foreign Affairs to supplement the record. (Id. at 65; see Docs. cr-806, 819.) Ms. Morales was recognized by this Court, but after speaking with counsel for the United States and Valencia-Trujillo, advised she had nothing further. (Id. at 66. Valencia-Trujillo declined this Court's invitation to speak. (Id. at 67).

Counsel argued that the issue this Court faced was "what to do with an advisory sentence under the guidelines of life and an agreement by the United States Government not to ask for a life sentence." (Id. at 67). This Court noted that under the extradition treaty, the maximum sentence was 40 years. (Id.). Valencia-Trujillo's counsel argued that the difficulty was to "fashion[ ] a sentence that will not be the equivalent of a life sentence." (Id. at 67-68). As support, counsel presented an exhibit regarding life expectancy. (Id. at 69-71). Counsel claimed that, based on the exhibit, imposing a sentence that exceeds

30 years "would be the equivalent of a life sentence." (Id. at 71). The United States urged this Court not to impose a sentence of life imprisonment but, notwithstanding the actuarial tables

provided by Valencia-Trujillo's counsel, observed that Valencia-Trujillo's father lived until he was 96 and his mother lived into her mid-80s. (Id. at 72-73). The United States, noting the "mind boggling" amount of cocaine involved, the 32-year sentences imposed for similarly-situation individuals including the Rodriguez Orejuela brothers who entered guilty pleas, and Valencia-Trujillo's lack of any acceptance of responsibility, requested a sentence between 35 and 40 years. (Id. at 73-74).

This Court denied Valencia-Trujillo's request for a 30-year sentence, and imposed a term of 40 years incarceration (480 months) with credit for time served. (Id. at 78-79). This Court noted its consideration of applicable case law, the advisory sentencing guidelines, and section 3553 factors, finding the sentence imposed was sufficient but not greater than necessary. (Id. at 81). The sentence, which varied below the recommended guideline range, was imposed with the extradition agreement with Colombia "in mind." (Id. at 81-82).

Valencia-Trujillo claims that counsel was ineffective for failing to discover and present mitigating evidence at sentencing, but fails to offer even one suggestion of any mitigating

evidence counsel could or should have discovered and presented at sentencing. When given the chance to speak on his own behalf in mitigation, Valencia-Trujillo

declined. (Doc. cr-936 at 67).

*Strickland* does not require defense counsel to "investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." *Wiggins v. Smith*, 539 U.S. 510, 533 (2003). Furthermore, unsupported, vague, conclusory claims should not be considered and do not entitle Valencia-Trujillo to section 2255 relief. Valencia-Trujillo's assertion that counsel failed to object to erroneous sentencing guideline calculations is unsupported because he does not identify which calculations were incorrect. Contrary to Valencia-Trujillo's vague assertion, the record reveals that counsel voiced numerous sentencing objections and ineffectively represented Valencia-Trujillo.

Valencia-Trujillo's related claim at ground thirty-four is equally unavailing. The record demonstrates that counsel made many challenges to the use of pre-December 17, 1997, acts or facts, at sentencing. Valencia-Trujillo's claim that counsel's failure resulted in this Court's specifically using such evidence to impose a 40-year sentence is incorrect. As discussed above, notwithstanding his money laundering conviction, Valencia-Trujillo's guideline calculation was driven by the drug amount. The drug quantity involved and the devastating, international effects of trafficking "poison" were the reason this Court imposed the sentence it did. (Doc. cr-936 at 75-77). Valencia-Trujillo has failed to establish that counsel was ineffective and that he is entitled to any relief on his claims.

Grounds thirty-three and thirty-four do not warrant relief.

## Ground Thirty-Five

Valencia-Trujillo claims counsel's failure to present evidence from members of the New York "operation," specifically Gustavo Martinez Ruiz, an individual he alleges cooperated with the United States and failed to implicate Valencia-Trujillo in the New York operations of the drug conspiracy, was ineffective. (Doc. cv-1 at 53). This claim provides no basis for relief.

In addition to pursuing a particular line of defense, counsel's failure to call particular

witnesses that the movant thinks would be helpful is generally not considered ineffective

assistance of counsel. *See Hardwick v. Crosby*, 320 F.3d 1127, 1160–61 (11th Cir. 2003). Instead, this decision is regarded as a tactical decision. *Id.*; *see also Tompkins v. Moore*, 193 F.3d 1327, 1334 (11th Cir. 1999) (counsel's failure to call a witness who claimed she saw the victim alive after the State alleged the defendant killed her was not ineffective when counsel believed the witness would not make a good witness); *United States v. Rubin*, 433 F.2d 442, 445 (5th Cir. 1970) ("decisions as to whether or not to call certain witnesses to the stand ... are tactical determinations. Errors, even egregious ones, in this respect do not provide a basis for post-conviction relief."). Which witnesses to call, and when to call them, is the epitome of a strategic decision. *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004). Strategic

decisions rendered by counsel after a complete review of relevant laws and facts are "virtually unchallengeable." *Strickland* 466 U.S. at 690-91.

Valencia-Trujillo fails to prove that counsel's strategic decision not to call Ruiz was deficient performance. Furthermore, in light of the ample evidence presented regarding the New York part of the conspiracy, which included the testimony of Ramon Orozco-Mejia and Monica Velilla, the decision not to call Ruiz does not establish prejudice.

Ground thirty-five does not warrant relief.

### Ground Thirty-Six

Valencia-Trujillo alleges his counsel was ineffective for failing to claim that the extradition agreement did not allow for forfeiture at sentencing. (Doc. cv-1 at 54). Valencia-Trujillo does not identity where such a prohibition can be found in any of the extradition documents. His conclusory claim is contrary to case law and lacks merit.

Valencia-Trujillo's indictment, which was part of the extradition package provided to Colombia, included a forfeiture count. (Doc. cr-114, Attachment A1). After the jury returned the guilty verdicts, the jury was given forfeiture jury instructions. The jury was instructed that $320 million in minimum gross proceeds were obtained by Valencia-Trujillo after December 17, 1997, as a result of his drug and money laundering offenses. (Doc. cr-943 at 40-46). That figure was based on 16 tons of cocaine -- 16,000 kilograms -- at $20,000 per kilogram. (Id. at 42, 45). The United States supported those figures with evidence presented at trial. (Id. at 46-47).

Valencia-Trujillo's counsel argued that the drug quantity was much less --10,700 kilograms -- at a cost of $15,000 per kilogram. (Id. at 48-49). The jury ultimately found that $110,000,000.00 was derived from or the proceeds of the drug offenses for which Valencia-Trujillo had been convicted. (Id. at 57-58; Docs. cr-766, 768).

It is well settled that "criminal forfeiture [i]s an aspect of punishment imposed following conviction of a substantive criminal offense." *Libretti v. United States*, 516 U.S. 29, 39 (1995); *see also United States v. Saccoccia*, 58 F.3d 754 (1st Cir. 1995) ("[C]riminal forfeiture is a punishment, not a separate criminal offense."); *United States v. Elgersma*, 971 F.2d 690, 694 (11th Cir. 1992) ("[C]riminal forfeiture is part of the sentencing process and not an element of the crime itself."); *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1577 (9th Cir. 1989) ("[F]orfeiture of property is not an element of the continuing criminal enterprise offense; it is an additional penalty prescribed for that offense."); *United States v. Sandini,* 816 F.2d 869, 875 (3d Cir. 1987) (same). Because criminal forfeiture is

not a substantive charge against the defendant, the doctrine of specialty is not violated where, as here, a defendant is subjected to criminal forfeiture charges on which he was not formally extradited. *See Saccoccia*, 58 F.3d at 784 (holding that appellant was properly subjected to a forfeiture order, even though extradition was not specifically granted with respect to the forfeiture charges, because "forfeiture is neither a free-standing criminal offense nor an element of a racketeering offense under RICO, but is simply an incremental punishment for that proscribed conduct").

Accordingly, counsel cannot be deemed ineffective for failing to raise this meritless claim.

Ground thirty-six does not warrant relief.

## VALENCIA-TRUJILLO'S MEMORANDUM AND REPLY

In his memorandum in support of the motion to vacate (Doc. cv-179), Valencia-Trujillo focuses on ground one -- the rule of specialty. Valencia-Trujillo does not offer support for any other grounds in the memorandum. In his reply, (Doc. cv-192) Valencia-Trujillo focuses on ground one, ground three, and ground nine.

The Court has incorporated the issues raised in the memorandum and reply responses in this Order.

Accordingly, the Court orders:

1. That all grounds in Valencia-Trujillo's 28 U.S.C. § 2255 motion to vacate, set aside or correct an illegal sentence (Doc. cv-1; cr-1045) are denied, except ground nine.

2. That, pursuant to ground nine above, Valencia-Trujillo will be resentenced at a resentencing hearing on **January 4, 2018** at **2:00 P.M.** in Courtroom 14A of the Sam Gibbons United States District Court House, Tampa, Florida. The hearing will be limited to resentencing and **no issues other than resentencing will be heard**.

3. That the parties submit sentencing memoranda on or before **December 15, 2017.** The parties shall not argue any issues other than resentencing.

4. The Government shall return Valencia-Trujillo to this jurisdiction no later than

**December 15, 2017.** The Government will prepare the necessary paperwork and submit the paperwork to the United States Marshals Service to ensure that Valencia-Trujillo is present at the hearing. The Government shall provide a copy of the paperwork to Chambers. The Government shall advise counsel as to where Valencia-Trujillo will be housed in this jurisdiction.

      ORDERED at Tampa, Florida, on August 4, 2017.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record